UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DEBRA L. GOODNOUGH,

                Plaintiff,

    -against-                                        5:07-CV-0469 (LEK)

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

---

## MEMORANDUM-DECISION and ORDER

**I.    BACKGROUND**

**A. Procedural History**

On June 29, 2001, Debra L. Goodnough ("Plaintiff") applied for Social Security Disability benefits. Administrative Transcript (Dkt. No. 7) ("Tr.") at 71-73. The Commissioner initially denied the applications, and Plaintiff timely requested a rehearing before an Administrative Law Judge ("ALJ"). Id. at 52, 56. A hearing was held in Syracuse, New York on November 20, 2002 before ALJ Alfred R. Tyminski. Id. at 26. ALJ Tyminski issued a decision finding that Plaintiff was not disabled on December 11, 2002. Id. at 13-23.

Plaintiff filed a timely written request for review by the Appeals Council, and the Appeals Council denied her request for review on November 14, 2003. Id. at 7. Plaintiff subsequently appealed this decision by filing a Complaint in the United States District Court for the Northern District of New York on December 8, 2003. Goodnough v. Comm'r. of Soc. Sec., 6:03-CV-01460 (LEK/DRH) (the "First Federal Case"). By Decision and Order on February 3, 2006, the Court affirmed the decision of the Appeals Council. Id. at Dkt. No. 11. Plaintiff did not appeal the

Court's decision further.

The matter presently before the Court relates to Plaintiff's second application for Social Security Disability Benefits. Plaintiff filed a new application for benefits after the first denial by the ALJ, alleging an onset of December 12, 2002, the day after the first ALJ decision. Id. at 465. This new claim was denied on April 17, 2003, and Plaintiff filed a request for a hearing on May 2, 2003. Id. at 458, 464. On March 24, 2004, a hearing on the claim was held before ALJ Barbara Gibbs in Syracuse, New York. Id. 431. By Notice and Decision, the ALJ denied the claim on April 9, 2004. Id. 431-441. Plaintiff filed a timely request for review of the decision by the Appeals Council, which was denied on April 12, 2007. Id. 426-30.

The present action was commenced pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) on May 2, 2007. Compl. Defendant interposed an Answer on July 11, 2008. Dkt. No. 8. Plaintiff filed a Brief in Support of the present action on August 25, 2008. Dkt. No. 9 ("Plaintiff's Brief"). Defendant filed a Brief in opposition on October 6, 2008. Dkt. No. 10 ("Defendant's Brief"). On March 17, 2009, the Honorable Norman A. Mordue, then-Chief United States District Judge for the Northern District of New York, issued an Order terminating the referral to Magistrate Judge David R. Homer and directing the Court to decide this case directly without a Report and Recommendation. Dkt. No. 11.

**B. Substantive Background**

Plaintiff is a fifty-seven-year-old high school graduate.[1] Id. at 724-25. In the past, she has worked as a data entry clerk, a bookkeeper, an expediter, a shipping checker, and a retail store

---

[1] Plaintiff was forty-eight years old at the time of the initial decision by the ALJ on this claim. Dkt. No. 1-2 ("Decision") at 8.

manager. Id. at 758. Plaintiff alleges that her disability results from scoliosis, an injury to her right foot, and a ganglion cyst on her left foot. Id. at 454-57, 465, 494, 748, 758. She has received cortisone shots for her feet, and Dr. Mark Post, a podiatrist, has operated on her four times, including performing a total joint replacement in 1998. Id. at 727, 753-54. She sees her general practitioner, Dr. Corliss Varnum, approximately semiannually. Id. at 728. In addition, Plaintiff receives physical therapy for neck, shoulder, and back pain. Id. at 744-45. She also performs home exercises four days per week for her neck and back. Id.

Plaintiff testified that her physical impairments caused her to suffer from functional limitations. Id. at 748-49, 759. She testified that she was able to sit for about an hour at a time, stand for fifteen minutes, and walk for five minutes. Id. at 749-50. She also complained of difficulty bending. Id. at 751-52. Plaintiff further testified that Dr. Post, Dr. Varnum, and Dr. William Mahon had all advised her not to lift more than ten pounds. Id. at 750-51.

At the administrative hearing, the ALJ also heard testimony from vocational expert Julie Andrews ("Andrews"). Id. at 759-65. Andrews testified that Plaintiff had performed semi-skilled to skilled work in the past, and that this work also ranged in character from exertionally sedentary to light activity. Id. at 761. In response to the ALJ's hypothetical questions, Andrews testified that Plaintiff would not be able to perform any of her past work activities. Id. at 762. Andrews did, however, testify that a hypothetical individual with Plaintiff's health conditions could perform the work of a mail clerk, a counter clerk, an order clerk, or a surveillance system monitor. Id. at 762-63.

## II. STANDARD OF REVIEW

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human

3

Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, a reviewing court will only reverse the Commissioner's determination if the correct legal standards were not applied or if the determination was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles"); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

The substantial evidence standard requires evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). The Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process to determine

4

whether an individual is disabled as defined under the Social Security Act.[2]  See 20 C.F.R. §§ 416.920, 404.1520.  The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and the five-step process remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42 (1987).  While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Id. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of the inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g), 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

---

[2] This five-step process is detailed as follows:
> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

5

**III.     DISCUSSION**

**A. Commissioner's Decision**

In her Decision, the ALJ conducted a *de novo* review of the available evidence and medical records. Dkt. No. 1-2 ("Decision").[3] The ALJ found that Plaintiff met the nondisability requirements set forth in § 216(i) of the Social Security Act and was insured for disability benefits through the date of the decision. Id. at 9. The ALJ also found that Plaintiff had not engaged in any substantial, gainful work since the date of her alleged disability onset. Id.

In her step three analysis, the ALJ concluded that Plaintiff's impairments were "'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1." Id. at 10. Therefore the ALJ had to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform the requirements of her past relevant work or other work that might be available in the national economy. Id.

In assessing Plaintiff's RFC, the ALJ concluded that "[t]he evidence of record establishes a basis for a degree of pain and functional limitation associated with [Plaintiff's] impairments, but it fails to support the disabling degree alleged by the claimant." Id. at 11. In reaching this decision, the ALJ focused, *inter alia*, on the fact that Plaintiff had spent two weeks camping in 2003 and that her scoliosis had been characterized as "mild." Id. at 11-12.

The ALJ gave "slight weight" to the report submitted by the treating physician, Dr. Varnum. Id. at 12. The ALJ explained that she treated the report as having minimal value because: Dr. Varnum is a family practitioner and not an orthopedic specialist; Dr. Varnum most frequently

---

[3] In referring to specific pages of the Decision, the Court uses the electronic page numbers inserted by the Clerk of the Court.

treated Plaintiff for upper respiratory infections; and her treatment of Plaintiff's scoliosis was limited to prescribing analgesics and referring Plaintiff to Dr. Mahon. Id. While the ALJ found Dr. Mahon's conclusion that Plaintiff could occasionally lift twenty pounds and frequently lift up to ten pounds to be consistent with other "substantial evidence of record," she found that his conclusion that Plaintiff could only stand or walk uninterrupted for less than an hour to be unsupported by any objective findings in the record. Id.

Therefore, the ALJ found that Plaintiff had the RFC to perform light work with a sit/stand option as long as Plaintiff was: not required to walk or stand for more than four hours in an eight hour workday; not required to crawl; and not exposed to temperature extremes, unprotected heights, vibration, gases, dust, fumes, or other pulmonary irritants. Id. at 14. Based on Andrews's testimony, the ALJ also concluded that although Plaintiff's exertional limitations do not allow her to perform the full range of light work, there are a significant number of jobs in the national economy that she could perform. Id. at 15. Finally, the ALJ concluded that at no time through the date of the decision was Plaintiff under a "disability." Id. at 15.

**B. Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision in this case should be reversed. Pl.'s Br. In support of this contention, Plaintiff relies on three principal arguments. First, Plaintiff asserts that the ALJ erred in giving the opinions of treating physicians, Dr. Varnum and Dr. Mahon, and examining physician, Dr. Berton Shayevitz, little weight. Id. at 7.[4] Second, Plaintiff argues that the ALJ erred in failing to consider that Plaintiff's repeated efforts to obtain pain relief enhance her credibility. Id. Third, Plaintiff contends that the ALJ's determination that Plaintiff retained the

---

[4] In referring to specific pages in Plaintiff's Brief, the Court uses the page numbers electronically inserted by the Clerk of the Court.

RFC to perform a significant range of light work with a sit/stand option is not supported by substantial evidence. The Court addresses each of these claims separately.

### 1. Physicians' Opinions

Under the "treating source rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Carter, 221 F.3d 126, 134 (2d Cir. 2000). Generally, this is because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairment." 20 C.F.R. § 404.1527(c)(2). Essentially, the physicians that are engaged in the primary treatment of Plaintiff are given more deference. See, e.g., Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). However, although the treating physician rule need not be applied if the treating physician's opinion is inconsistent with opinions of other medical records, "not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." Id.

In evaluating whether the treating physician's opinion should be given controlling weight, the ALJ must consider various factors including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2); Shaw, 221 F.3d at 14 (quoting Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998)). In addition, the ALJ must set forth the reasons for the weight that he assigns to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Shaw, 221 F.3d at 134.

a. Dr. Varnum

Plaintiff first contends that the ALJ erred in giving the opinion of treating physician Dr. Varnum little weight and "substitut[ing] her own judgment" for his. Pl.'s Br. at 7-10. The Court, however, concludes that the ALJ's decision to afford limited weight to Dr. Varnum's report was supported by substantial evidence and therefore is not subject to remand.

While the Decision does not contain a lengthy discussion of Dr. Varnum's medical report, the ALJ specifically states why she is affording the report limited weight, and in so doing identifies several of the factors enumerated in 20 C.F.R. § 404.1527(c)(2) as guiding her decision. First, the ALJ notes that Dr. Varnum is a family care physician and not an orthopedic specialist. Decision at 12. She also emphasizes that his treatment of Plaintiff was primarily unrelated to any of the health problems at issue here and that to the extent Dr. Varnum was involved in treating Plaintiff's scoliosis, this treatment was limited to prescribing pain medication and referring Plaintiff to Dr. Mahon.

Even if the Court might have weighed these considerations differently if the matter had been before it originally, the Court does not find ALJ's Decision to be irrational or unsupported by facts on the record. See Rutherford, 685 F.2d at 62. Therefore, the Court does not find the ALJ's application of the treating source rule with respect to Dr. Varnum provides grounds for remand.

b. Dr. Mahon

Plaintiff also contends that the ALJ afforded insufficient weight to the opinion of Dr. Mahon. Pl.'s Br. at 9-10. Unlike Dr. Varnum, Dr. Mahon is an orthopaedic surgeon whose treatment of Plaintiff focused on her scoliosis and not on unrelated maladies. Id. at 9; see also Tr. 675-79.

9

In her decision, the ALJ credits Dr. Mahon's opinion that Plaintiff could occasionally lift twenty pounds and frequently lift up to ten pounds because this assessment "accord[s] with the other substantial evidence of record." Decision at 12. The ALJ, however, discounts Dr. Mahon's finding that Plaintiff can only stand or walk uninterrupted for less than one hour because "Dr. Mahon does not refer to any objective findings which support this conclusion" and, "upon review of the record," the ALJ encountered no such objective findings. Id.

As with her discussion of Dr. Varnum's opinion, the ALJ states the reason that she has afforded (part of) his opinion limited weight. Also, as with her discussion of Dr. Varnum's opinion, the ALJ identifies one of the factors articulated in 20 C.F.R. § 404.1527(c)(2) – the evidence supporting the opinion – as motivating her decision. The Court notes that this explanation is sparse, but given the deferential standard of review afforded to ALJ decision-making, the Court concludes that a "reasonable mind might accept [this explanation] as adequate to support a conclusion." Richardson, 402 U.S. at 401. Therefore, the Court does not find that the ALJ's application of the treating source rule with respect to Dr. Mahon provides grounds for remand.

### c. Dr. Shayevitz

Although Dr. Shayevitz only performed a consultative examination on Plaintiff and was not a treating physician, Tr. at 629, Plaintiff contends that the ALJ erred in not giving weight to Dr. Shayevitz's opinion and in failing to consider that his opinion supported the opinions of the treating physicians. Pl.'s Br. at 9. Dr. Shayevitz had no doctor-patient relationship with Plaintiff prior to March 17, 2033, when he examined her on behalf of the state agency. Tr. at 629. Based on his examination, Dr. Shayevitz observed, *inter alia*, "significant scoliosis in the back," "ongoing discomfort" of the foot, and "back pain secondary to scoliosis." Id. at 628. He further noted that

10

Plaintiff "is moderately to markedly limited in mobility by both her right foot and her scoliotic back and also in ability to lift, bend, push, pull, and sit for prolonged periods." Id. at 629.

The Court notes initially that unlike the opinions of Dr. Varnum and Dr. Mahon, Dr. Shayevitz's opinion receives no direct mention in the ALJ's Decision. See generally Decision. However, this omission in and of itself is hardly fatal to the ALJ's decision. "When . . . the evidence of record permits [a court] to glean the rationale of an ALJ's decision, [courts] do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Monguer v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)). "[A]t the same time he cannot pick and choose only parts of a medical opinion favoring his conclusion of nondisability and he cannot ignore an entire line of evidence that is contrary to [his] findings." Mecklenburg v. Astrue, No. 07-CV-760, 2009 WL 4042939, at *4 (W.D.N.Y. Nov. 19, 2009) (internal quotation marks and citations omitted).

In the case of Dr. Shayevitz's opinion, the Court concludes that the ALJ had sufficient evidence to make her decision and need not have discussed Dr. Shayevitz's opinion. Following its review of Dr. Shayevitz's opinion and Plaintiff's arguments, the Court is not convinced that the opinion was contrary to the ALJ's findings and improperly ignored. Id. Therefore, the Court does not find that the failure to afford weight to Dr. Shayevitz's opinion provides sufficient basis to vacate the Commissioner's decision and remand this matter.

### 2. Plaintiff's Credibility

Plaintiff's second primary argument is that the ALJ erred in failing to consider that Plaintiff's "persistent efforts to obtain pain relief" enhances her credibility. Pl.'s Br. at 13.

However, the Court concludes that the ALJ's credibility determination was supported by substantial evidence.

When there is conflicting evidence about the extent of material issue such as a claimant's pain or other disability, the ALJ must evaluate that claimant's credibility. See, e.g., Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999); Donato v. Sec'y of Dept. of Health & Human Serv. of U.S., 721 F.2d 414, 418 (2d Cir. 1983); Correale-Englehart, 687 F. Supp. 2d at 434. An ALJ "may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (Kahn, J.) (quoting Gallardo v. Apfel, No. 96-CV-9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). However, the ALJ's discretion to weigh testimony is not unlimited because subjective testimony is an important factor to be considered when determining disability. See Correale-Englehart, 687 F. Supp. 2d at 434 (citing Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)). An ALJ's credibility analysis is not supported by substantial evidence when the analysis is based on inaccurate or inconsistent evidence. See, e.g., Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010) (remanding because ALJ misinterpreted testimony); Horan v. Astrue, 350 F. App'x 483, 485 (2d Cir. 2009) (remanding because ALJ made factual errors, based assessment on testimony that did not exist, and failed to consider work history); Haggerty v. Comm'r of Soc. Sec., No. 3:10-CV-306, 2011 WL 841443, at *12 (N.D.N.Y. Feb. 14, 2011) (remanding because ALJ's factual summary was inaccurate and credibility analysis was therefore flawed).

In her decision, the ALJ provides several bases for her skepticism about Plaintiff's

credibility. Decision at 11-12. First, the ALJ observes that Plaintiff spent two weeks in the summer of 2003 camping and noted that this "seems somewhat inconsistent with the debilitating severity of the pain alleged." Id. at 11. The ALJ also notes that Plaintiff was advised to adhere to an exercise regimen and lose fifteen to twenty pounds, but has instead gained nine pounds. Id. at 11-12. Further, the ALJ contrasts Plaintiff's testimony that she went to physical therapy with "little relief" with treatment notes that "suggest that the treatments were completed with minimal complaints of pain." Id. at 12. "[D]espite [Plaintiff's] testimony that her pain rated an '8' on a scale of 10," the ALJ noted that Plaintiff's "scoliosis was characterized in 1995 as mild" and "[t]he ganglion cyst removed from [Plaintiff's] left foot did recur but was noted to be 'minimally painful.'" Id. at 12.

Defendant, in his brief, points to a number of other "inconsistencies" in Plaintiff's testimony that Defendant contends add substantial support to the ALJ's credibility determination. Defendant focuses, at least in part, on a number of purported inconsistencies between Plaintiff's description of her painful limitations and Plaintiff's daily activities. Def.'s Brief at 18 ("Plaintiff testified that her twelve year old daughter and husband do most of the household chores . . . . Yet, she added that she grocery shops about once a month." (citations omitted)).[5]

The Court first rejects Defendant's arguments as unpersuasive. See Knighton v. Astrue, No. 5:09-CV-0991, 2012 WL 951575, at *8 (N.D.N.Y. Mar. 20, 2012) (holding that activities such as caring for pets, preparing simple meals, driving a vehicle, and helping with household chores do not by themselves contradict allegations of disability); Murdaugh v. Sec'y of Dept. of Health & Human Services of U.S., 837 F.2d 99, 102 (2d Cir. 1988) ("[A] claimant need not be an invalid to be found disabled." ). "[I]t is well-settled that '[s]uch activities do not by themselves contradict allegations of

---

[5] Defendant also notes in support of this argument that Plaintiff drives. Def.'s Brief at 18.

disability,' as people should not be penalized for enduring the pain of their disability in order to care for themselves." Knighton, 2012 WL 951575, at *8 (quoting Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000)).

As to the decision itself, the Court finds several of the ALJ's statements in her credibility analysis to be similarly unpersuasive. First, the Court finds it to be a baffling – and somewhat troubling – assertion that because Plaintiff was instructed to try to lose weight but instead gained weight, she is therefore not to be trusted. That Plaintiff's weight loss plan was unsuccessful or that she failed to adhere to it does not support the claim that she was pain-free or in a condition to work. If failure to control her weight made Plaintiff incredible, she would be joined in that category by a large portion of American adults. Second, the ALJ concludes that a 1995 finding that Plaintiff's scoliosis was "mild" contradicts Plaintiff's testimony of high levels of pain. Given that Plaintiff's claimed onset date was in 2002, the Court is not convinced that a seven-year-old diagnosis refutes a recent assessment of pain.

Nevertheless, based on the other facts considered by the ALJ – the two extended camping trips; the physical therapy treatment notes; and diagnosis of the ganglion cyst – the Court concludes that the ALJ's credibility determination was supported by substantial evidence. Therefore, it is at worst harmless error that the ALJ did not explicitly mention Plaintiff's "persistent efforts to obtain pain relief" in her Decision.

### 3. RFC Determination

The Social Security Act outlines a five step evaluation process that is to be utilized by the ALJ in determining whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Specifically, at Step Four of the analysis, the ALJ must determine Plaintiff's RFC. 20 C.F.R.

§404.1520(a)(4)(iv), (e); 20 C.F.R. §416.920(e). RFC is:

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.

Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *2 (SSA July 2, 1996)). In assessing the RFC of an individual, the ALJ must consider the individual's impairment "and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the individual] can do in a work setting." 20 C.F.R. § 404.1545(a)(1). Accordingly, the ALJ must assess the RFC based on all relevant and medical evidence in the record. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(3). Ultimately, the RFC is used to determine whether an individual can perform past work. 20 C.F.R. § 404.1545(a)(5)(i). If, however, it is concluded that the individual, based on her RFC, cannot perform past work, then the ALJ utilizes the RFC to evaluate Step Five to determine whether the individual can adjust to other work that exists in the national economy. 20 C.F.R. §404.1545(a)(5)(ii).

Specifically, at Step Five the burden of proof shifts to the Commissioner in showing "there is other gainful work in the national economy [which] the claimant could perform." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998). The ALJ's determination at Step Five of the analysis consists of two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v). Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20

15

C.F.R. §§ 416.920(g); 404.1520(g).

Here, the ALJ determined that Plaintiff has the RFC to perform light work with a sit/stand option as long as Plaintiff was: not required to walk or stand for more than four hours in an eight-hour workday; not required to crawl; and not exposed to temperature extremes, unprotected heights, vibration, gases, dust, fumes, or other pulmonary irritants. Decision at 14. Based on Andrews's testimony, the ALJ also concluded that although Plaintiff's exertional limitations do not allow her to perform the full range of light work, based on Plaintiff's RFC, age, education, work experience, there are jobs that exist in the national economy that Plaintiff can perform. Id. at 14-15.

Plaintiff raises three primary arguments relating to the RFC determination: (1) the ALJ's decision affirmed in the First Federal Case issued a sedentary work determination, making the current decision erroneous; (2) the RFC determination is contradicted by the opinions of Dr. Varnum, Dr. Mahon, and Dr. Shayevitz; and (3) the ALJ erroneously ignored the testimony of Andrews that Plaintiff would be unable to perform any sustained employment. Pl.'s Br. at 16.

As to Plaintiff's first argument, the Court notes once again that if the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld, see Rutherford, 685 F.2d at 62, and that if supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado, 805 F. Supp. at 153. The fact that the Court upheld a different decision on a similar record and *that a different decision was reached* on a similar record does not mean that the Court may (or should) remand this matter. The Court concludes that the instant Decision is supported by substantial evidence, just as it found that the decision in the First Federal

Case was supported by substantial evidence. Neither the Court's holding here nor the Court's holding there is tantamount to a declaration that the ALJ was correct in reaching the result that she reached. All that the Court found before and finds here is that the decision was supported by substantial evidence. Therefore, the presence of an inconsistency between the two is not *per se* proof of error in the instant decision.

As to Plaintiff's second argument, the Court refers to its discussion of the physician's opinions *supra*. Because the ALJ provided substantial evidence for her decisions regarding the treating physicians, and because she was not required to address the consultative physician's report explicitly in her decision, that these opinions may have dictated a different result is not sufficient grounds to remand this matter.

The third argument, similarly, relies upon Plaintiff's insistence that the ALJ should have credited Dr. Varnum. Plaintiff's claim is that the ALJ wrongfully ignored Andrews' testimony that "Plaintiff would be unable to perform any sustained employment based upon the limitations noted *and the medical assessment of Dr. Varnum*." Pl.'s Br. at 16 (emphasis added). Because the ALJ had provided sufficient explanation for her decision not to credit Dr. Varnum's opinion, she need not have dealt with testimony that relied on the veracity of his opinion.

## IV. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Decision of the Commissioner is **AFFIRMED;** and it is further

**ORDERED**, that the Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

17

**IT IS SO ORDERED**.

DATED:	January 17, 2013
	Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge